STEAGALL, Justice.
The Jefferson County Teachers Credit Union (hereinafter the “Credit Union”) filed a complaint in interpleader against SouthTrust Bank of Alabama, N.A. (“SouthTrust”), Robert R. Murphy, and J. Wayne Clark, alleging that it had made a loan to Elizabeth Howard to finance the purchase of a 1990 Cadillac automobile from Rickwood Auto Sales (“Rickwood Auto”). The Credit Union issued a check to Howard and Rickwood Auto, which was then negotiated to SouthTrust. Before the Credit Union honored the check, however, *270 Murphy notified the Credit Union that he still owned the Cadillac, that he had merely delivered it to Rickwood Auto on consignment, and that he was therefore entitled to the $15,200. The Credit Union issued a stop payment order on the check and filed the interpleader action. Murphy and SouthTrust Bank both filed claims to the interpleaded funds.
Murphy also filed a cross-claim against SouthTrust, alleging fraud, conspiracy, and willful misconduct. SouthTrust filed a motion for summary judgment, which the trial court granted. Murphy appeals.
A summary judgment is proper only if the trial court determines that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Lee v. City of Gadsden, 592 So.2d 1036 (Ala. 1992).
The material facts in this case are undisputed. In October 1990, Rickwood Auto obtained a revolving credit line loan of $300,000 from SouthTrust. Under the terms of the credit agreement, SouthTrust agreed to make periodic cash advances to Rickwood Auto under the credit line to finance Rickwood Auto’s used car inventory. In exchange, Rickwood Auto granted SouthTrust a security interest in this inventory and in all proceeds from the sale of the inventory. SouthTrust perfected its security interest in the inventory and proceeds by filing a UCC-1 financing statement with the secretary of state.
In December 1990, Wayne Clark, the president of Rickwood Auto, entered into an agreement with Murphy to display the Cadillac on Rickwood Auto’s lot and to remit to Murphy any sales proceeds in excess of $18,500. Murphy delivered the Cadillac to Rickwood Auto, together with the certificate of title issued by the Alabama Department of Revenue. Clark then requested an advance of $18,4000 under his SouthTrust credit line and represented to SouthTrust that he would use the advance to finance Rickwood Auto’s purchase of the Cadillac. Clark delivered to SouthTrust the certificate of title for the car, a bill of sale showing that Murphy had sold the Cadillac to Rickwood Auto, and a power of attorney authorizing Rickwood Auto to transfer title to the car. SouthTrust then made the requested advance to Clark.
Rickwood Auto subsequently defaulted under the terms of the credit agreement, and SouthTrust demanded immediate payment. SouthTrust then began to assess the inventory Clark had on the lot. Clark informed the bank that Murphy claimed an interest in a certain 1985 Oldsmobile on the lot, but he did not mention the Cadillac; a SouthTrust representative then called Murphy to verify this fact. Murphy informed the representative that he claimed an interest in both the Oldsmobile and the Cadillac.
A few days later, SouthTrust agents went to Rickwood Auto to repossess all existing used automobile inventory, and Clark informed them that Elizabeth Howard had agreed to purchase the Cadillac. He asked permission to move the car to a local “clean-up” shop, and the agents agreed. Later that day, Murphy met with Clark on the premises of Rickwood Auto. After the meeting, Murphy made the following statement to the SouthTrust agents: “We are clear on the Cadillac. The Cadillac is not a problem.” Later that day, a SouthTrust representative telephoned Murphy and again asked him if he was claiming an interest in the Cadillac. Murphy stated that he did not have an interest in the car and that he had sold the car to Rickwood Auto in December 1990.
On the next day, Howard went to Rick-wood Auto and gave the dealership a $4,285.98 personal check and a $15,200 cashier’s check issued by the Credit Union. Rickwood Auto endorsed both checks and gave them to SouthTrust, which then learned that Murphy was claiming an interest in the Cadillac. The Credit Union then stopped payment on the cashier’s check.
In its motion for summary judgment, SouthTrust argued that Murphy was a consignor of the automobile and that he had failed to comply with the notification provision of Ala.Code 1975, § 7-9-114. South-Trust pointed out that it had a perfected security interest in the car and thus argued *271 that it had priority under the applicable Uniform Commercial Code provisions.
Alabama law defines a “consignment” or “sale or return” as follows:
“Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return.”
§ 7-2-326(3).
The test of whether a transaction is a sale or consignment is simply one of looking at the outwardly visible aspects of the transactions outlined in § 7-2-326, which are (1) the consignor’s delivery of possession to the consignee, (2) the fact the consignee engages in the business of selling goods of the kind involved, and (3) the failure of the consignor to give public notice of his retained interest in the goods. Bischoff v. Thomasson, 400 So.2d 359 (Ala. 1981).
The record shows that Murphy de: livered the Cadillac to Rickwood Auto, which maintained a place of business where it dealt in the sale of used automobiles. The Cadillac was sold under Rickwood Auto’s name, not Murphy’s, and Murphy had not given public notice of any retained interest in the goods. Accordingly, Murphy’s delivery of the vehicle to Rickwood Auto is a consignment under § 7-2-326.
Section 7-9-114, Ala.Code 1975, governs the priority of competing claims between a consignor and a secured party. The claims of a consignor have priority over the claims of a secured party if (1) the consignor complies with the filing provisions of Article 9 before the consignee receives possession of the goods, (2) the secured party, if he has filed a financing statement covering the same type of goods before the date of the consignor’s filing, receives notification in writing from the consignor before the consignee receives possession of the goods, (3)the secured party receives the notification within five years before the consignee receives possession of the goods, and (4) the notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type. § 7-9-114.
The record reveals that Murphy did not comply with these requirements, all of which are mandatory. Murphy argues, however, that he was a “consumer” consignor rather than a “commercial” one, and he urges this Court to carve out an exception to the requirements of § 7-9-114. Murphy cites Allgeier v. Campisi, 117 Ga. App. 105, 159 S.E.2d 458 (1968), and Founders Inv. Corp. v. Fegett (not formally reported) 23 U.C.C.Rep.Serv. 903 (Ky.Ct. App.1978), which establish a “consumer” exception to identical UCC provisions in Georgia and Kentucky, respectively. In Bischoff v. Thomasson, supra, however, this Court explicitly rejected the holding of these “maverick” cases. There, we noted that if the drafters of § 7-9-114 had intended to limit the scope of the section to commercial consignors only, they could have inserted a limiting phrase; they did not. We find no reason today to deviate from our conclusion in Bischoff
We note that there are alternative provisions under § 7-2-326(3)(c) giving a consignor’s claims priority over a perfected security interest even if the consignor did not comply with § 7-9-114. Under the alternative provisions, the consignor has priority if he (1) complies with an applicable law providing for a consignor’s interest or the like to be evidenced by a sign, (2) establishes that the consignee is generally known by his creditors to be substantially engaged in selling goods of other individuals, or (3) files a UCC-1 financing statement in accordance with Article 9 of the Alabama UCC. It is undisputed that Murphy did not file a financing statement or comply with an applicable law, and the record contains no evidence to show that Rickwood Auto was generally known to be substantially engaged in selling goods on consignment. Because Murphy did not properly comply with the provisions of either § 7-9-114 or § 7-2-326(3), we must conclude that SouthTrust’s perfected security interest has priority over Murphy’s *272 interest under § 7-9-114. Accordingly, the court properly entered the summary judgment for SouthTrust.
AFFIRMED.
HORNSBY, C.J., and ADAMS, KENNEDY and INGRAM, JJ., concur.